**IN THE  UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS CONCERT,** | : | **CIVIL NO. 3:12-CV-1457** |
| | : | |
| **Plaintiffs,** | : | **(Judge Caputo)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **NORTHEAST FOSTER CARE** | : | |
| **INC., et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.     Statement of Facts and of the Case

This case represents the latest chapter in a decades-long legal saga involving

Thomas Concert, his children, and the Luzerne County foster care system.  This *pro*

*se* civil rights complaint, which was initially brought by Thomas Concert in the Court

of Common Pleas of Luzerne County,  arises out of a twenty-year old child custody

dispute that has raged between Concert and Luzerne County authorities.  Over the

past two decades this dispute has inspired protracted civil and criminal litigation, at

least one mental health evaluation of Concert, countless letters and phone calls by

Concert to an array of state officials, and the instant lawsuit.

1

While Concert has pursued this quixotic course of litigation over the past twenty years, events have transpired which have overtaken many of Concert's claims. At the outset, in 1990, Concert's two daughters were placed in foster care. (Doc. 8, p.1.) These children remained in the foster care system until they reached the age of majority, in 2002 and 2005 respectively. (Id.) Thus, the foster care placement which Concert protests in this lawsuit, has long since ended. Concert's children are adults, living their own lives independent of the county foster care system, and the legal process which led to their foster care placement has been completed for as much as a decade with respect to Concert's eldest child, and for seven years with respect to his youngest daughter.

Furthermore, in this case, we do not write upon a blank slate in assessing Concert's complaint. Quite the contrary, we have already had occasion to assess and review the merits of these claims on multiple occasions. See, e.g., Concert v. Luzerne County Children & Youth Services, CIV. A. 3:CV-08-1340, 2008 WL 4753709 (M.D. Pa. Oct. 29, 2008); Concert v. Luzerne County Dept. of Children & Youth, CIV.3:10-CV-1219, 2010 WL 2505685 (M.D. Pa. June 15, 2010). Moreover, on at least one prior occasion in 2010, we notified Concert that his efforts were futile since his claims were barred on multiple legal grounds, including statute of limitations and the Rooker-Feldman abstention doctrine. Concert v. Luzerne County

2

<u>Dept. of Children & Youth</u>, CIV.3:10-CV-1219, 2010 WL 2505685 (M.D. Pa. June 15, 2010).

Despite this past notice of the futility of these efforts, Concert has persisted in pursuing this legal quest through the filing of the instant action. This particular complaint was originally filed by Concert in the Court of Common Pleas of Luzerne County, on May 28, 2010, (Doc. 1, Ex. A.) This complaint, which has been amended twice by Concert while this case was pending in state court, (Doc.1, Ex. D and G.), remains a confusing, prolix and flawed pleading. Concert's state complaint voices his ongoing dissatisfaction with child custody decisions that were made as early as 1990, as well as an alleged decision by county officials to allow Concert's daughter, who had been removed from his custody decades earlier, to travel to Mexico sometime after September 11, 2001. The allegations in the complaint clearly indicated that these matters have been the subject of lengthy, on-going state court litigation spanning many years; that these children were under some form of state court supervision for more than a decade; that Concert's children are now adults and are no longer subject to the county foster care system; and that any action by this Court would intrude into issues which are the subject of prior state litigation. Finally, the events set forth in the complaint began in the 1980's and continued until no later than 2005 when Concert's youngest child reached the age of majority. Thus, the

matters which are the subject of Concert's complaint are decades-old, and have long

been known to the Plaintiff.

Moreover, despite two separate efforts by Concert to amend his complaint in

the Court of Common Pleas of Luzerne County, Concert's second amended

complaint, which has been removed to federal court, remains in many ways an

inscrutable and wholly unintelligible document. For example, in this pleadings,

Concert alleges that:

> Where forof ather states following this added Out of jurisdiction
> excursion it became clear that the conduct of abuse was retroactive for
> the first day of acquaintance with the defendants however immediately
> after the biological father announced his quest for criminal prosecution
> along with the Reunited of his biological children The above said
> defendants became more at rage more dysfunctional to law and order
> pertaining to the principal family Thomas concert and children initials
> RK JK. With consistent retroactive communications Couldn't find a
> remedy or resolution to the problems that exist to level of intimidation
> retaliation fictitious allegation slander as additional to submit to the
> record supporting professional medical misconduct.

(Doc. 1, Ex. G, p.16.)

Concert then goes on the aver that:

> Plaintiff in this action has clearly stated that the pattern of practice
> conducted by the defendants serve no purpose to the fundamental
> policies of any court order of a program or any rule or law in Luzern
> County, state of Pennsylvania or United States of America where he
> honestly believes that in himself alone with his family and children were
> commodities of pork bellies of the same for their own financial gain

> nothing more nothing less withe long-lasting damaging effects on the
> The fundamental basis of his children the plaintiff Life and family . . .

(<u>Id</u>., ¶32, p. 20.)

On July 26, 2012, the Defendants removed this second amended complaint to federal court, (Doc. 1.), and moved to dismiss Concert's complaint. (Doc. 4.) Defendants filed a brief in support of their motion to dismiss on August 10, 2012. (Doc. 8.) On August 13, 2012, the Court issued a scheduling order that required Plaintiff to file a response to Defendants' motion on or before August 27, 2012. (Doc. 9.) On August 27, 2012, Concert filed a motion seeking a 90-day extension of time to file a responsive brief. (Doc. 10.) Plaintiff's motion was, in many instances, exceedingly difficult to follow or interpret, and otherwise failed to set forth a sufficient justification for such a lengthy enlargement of time to respond to a threshold dispositive motion. Accordingly, we granted Concert a two-week extension of time in which to respond to this motion to dismiss, and set a response deadline of September 12, 2012, in this case.

On September 12, 2012, the date set for Concert's response to this motion, the Plaintiff filed a motion for leave to amend this complaint, once again. (Doc. 13.) Concert's motion for leave to amend was a prolix, and occasionally unintelligible, 127-page pleading. Despite its extraordinary length, the motion did not comply with

Local Rule 15.1 in that it did not attach the Plaintiff's proposed amended complaint

for our consideration.  (Doc. 13.)

We denied this request, noting that the District Court still retains broad

discretion to deny a motion to amend, <u>Bjorgung v. Whitetail Resort, LP,</u> 550 F.3d 263

(3d Cir. 2008); <u>Cureton v. National Collegiate Athletic Ass'n</u>., 252 F.3d 267 (3d Cir.

2001), and may deny a request:

> if the plaintiff's delay in seeking to amend is undue, motivated by bad
> faith, or prejudicial to the opposing party. <u>Adams</u>, 739 F.2d at 864.
> Delay becomes "undue," and thereby creates grounds for the district
> court to refuse leave, when it places an unwarranted burden on the court
> or when the plaintiff has had previous opportunities to amend. <u>Cureton</u>,
> 252 F.3d at 273 (citing <u>Adams</u>, 739 F.2d at 868; <u>Lorenz v. CSX Corp</u>.,
> 1 F.3d 1406, 1414 (3d Cir.1993)).  Thus, our review of the question of
> undue delay . . . will "focus on the movant's reasons for not amending
> sooner," <u>Cureton</u>, 252 F.3d at 273, and we will balance these reasons
> against the burden of delay on the District Court.  <u>Coventry v. U.S. Steel
> Corp</u>., 856 F.2d 514, 520 (3d Cir.1988).

<u>Bjorgung v. Whitetail Resort, LP, supra</u>, 550 F.3d at 266.

Furthermore, "'[a]mong the grounds that could justify a denial of leave to

amend are undue delay, bad faith, dilatory motive, prejudice, and futility.'  <u>In re

Burlington Coat Factory Sec. Litig</u>., 114 F.3d 1410, 1434 (3d Cir.1997)

('<u>Burlington</u>'); <u>Lorenz v. CSX Corp</u>., 1 F.3d 1406, 1413-14 (3d Cir.1993).  'Futility'

means that the complaint, as amended, would fail to state a claim upon which relief

could be granted. <u>Burlington</u>, 114 F.3d at 1434." <u>Shane v. Fauver</u>, 213 F.3d 113, 115

(3d Cir. 2000).  Moreover, a party seeking to supplement pleadings must act in a diligent fashion.  Thus, for example, "[a] District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them.  Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 654 (3d Cir.1998)."  Krantz v. Prudential Investments Fund Management LLC, 305 F.3d 140, 144 (3d Cir. 2002).  Finally, in every instance, the exercise of this discretion must be guided by the animating principle behind Rule 15 which is "to make pleadings a means to achieve an orderly and fair administration of justice."  Griffin v. County School Bd. of Prince Edward County, 377 U.S. 218, 227 (1964).

In this case, we specifically concluded that the delay in moving to amend was now "undue" since "the plaintiff has had [ample] previous opportunities to amend." Moreover, when we "focus[sed] on the movant's reasons for not amending sooner," Cureton, 252 F.3d at 273, as we are required to do, we also found that Concert had not given an adequate explanation for this delay.  Further, we found that permitting this amendment at this late date, after Concert had  received two prior opportunities to attempt to amend this complaint,  would be "prejudicial to the opposing party," Bjorgung v. Whitetail Resort, LP, supra, 550 F.3d at 266.  Finally, we noted that Concert's failure to comply with Local Rule 15.1 further warrants denial of this

request.  Instead, we directed Concert to file a response to the pending motion to dismiss on or before September 21, 2012.  (Doc. 14.)

Concert did not comply with this directive, and the time for compliance has now passed.  Accordingly this matter is now ripe for resolution.  For the reasons set forth below, it is recommended that Concert's complaint be dismissed.

## II.   Discussion

### A.   Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted

At the outset, under the Local Rules of this Court the Plaintiff should be deemed to concur in these motions, since Concert has failed to timely oppose the motion, or otherwise litigate this case.  These procedural defaults completely frustrate and impede efforts to resolve this matter in a timely and fair fashion, and under the Rules of this Court warrants dismissal of the action, since  Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to  motions and  provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion*. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the

prescribed period for filing a brief in opposition. A brief in opposition
to a motion for summary judgment and LR 56.1 responsive statement,
together with any transcripts, affidavits or other relevant documentation,
shall be filed within twenty-one (21) days after service of the movant's
brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc., No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case Concert has not complied with the Local Rules, or this Court's orders, by filing a timely response to this motion. On these facts, the Plaintiff's procedural defaults compel the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal
> Rules are meant to be applied in such a way as to promote justice. See
> Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve
> cases on their merits whenever possible. However, justice also requires
> that the merits of a particular dispute be placed before the court in a
> timely fashion ...." McCurdy v. American Bd. of Plastic Surgery, 157
> F.3d 191, 197 (3d Cir.1998).

Lease v. Fishel, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and

9

impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." Id. Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the Plaintiff has failed comply with this Court's orders, and has neglected to comply with Local Rule 7.6 by filing a timely response to a motion to dismiss filed by the Defendants. These cumulative failures now compel us to apply the sanction called for under the Local Rules and deem the Plaintiff to not oppose the motion to dismiss.

### B.    Dismissal of this Case Is Also Warranted Under Rule 41

Beyond the requirements imposed by the Local Rules of this Court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure

to prosecute rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion, however, while broad, is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a District Court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, No. 10-1877, 2011 WL 2489897, *3 (3d Cir. June 23, 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008)) Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus, 538

F.3d at 263. Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus,  538 F.3d at 263.  However, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction.  See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action.  At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the Plaintiff, who has failed to abide by court orders and has neglected to litigate this case.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action.  Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great

weight and careful consideration. As the United States Court of Appeals for the

Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." <u>Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund</u>, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." <u>Id</u>. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. <u>Id.</u>; <u>see also</u> <u>Ware v. Rodale Press, Inc</u>., 322 F.3d 218, 222 (3d Cir.2003); <u>Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.</u>, 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." <u>Ware</u>, 322 F.3d at 222. Oftentimes, this type of prejudice involves disputes between the parties on discovery matters because the defendants were deprived of necessary information or had to expend costs to obtain court orders for compliance. <u>See, e.g., Poulis</u>, 747 F.2d at 868 (finding that the defendants were prejudiced where the plaintiffs did not answer interrogatories,the defendants had to file a motion to compel the plaintiffs' answers, and the defendant had "to file its pre-trial statement without the opportunity to review plaintiffs' pretrial statement which was due to be filed first"); <u>Ware,</u> 322 F.3d at 220-23 (affirming the District Court's conclusion that a defendant had been prejudiced where the plaintiff repeatedly ignored the defendant's discovery request for the plaintiff's computation of damages and did not provide it until one week prior to trial).

<u>Briscoe v. Klaus</u>, 538 F.3d at 259-60.

In this case, the Plaintiff's failure to litigate this claim or comply with court

orders now wholly frustrates and delays the resolution of this action. In such

instances, dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate. In this regard, while it is evident that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874; [it is also clear that] conduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness.'" Briscoe v. Klaus, 538 F.3d at 260-61 (some citations omitted). Here, since the removal of his complaint to federal court, the Plaintiff has failed to timely file pleadings, and has not complied with orders of the Court. Thus, Concert's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the Plaintiff. In this setting we must assess whether this inaction reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994). Here, we find that the Plaintiff's actions were willful, and reflect a pattern of willfulness. At this juncture, when the Plaintiff has failed in this case to comply with instructions of the Court directing him to take specific actions in this lawsuit, and has violated court orders and the Local Rules, the Court is compelled to conclude that the Plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191. This case presents such a situation where the Plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering

our prior orders, and counseling the Plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The Plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the Plaintiff's claims. In our view, however, consideration of this factor cannot save this particular Plaintiff's claims, since Concert is now wholly non-compliant with his obligations as a litigant. The Plaintiff cannot refuse to cooperate with this litigation, which would address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to dismiss. In any event, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Therefore, the untested merits of the non-compliant Plaintiff's claims, standing alone, cannot defeat this motion. More fundamentally, as discussed below, Concert's claims fail on their merits, yet another factor which favors dismissal of this action. The legal flaws inherent in these claims are discussed separately below.

## C.    Concert's Claims Fail on their Merits

The Defendants have moved to dismiss this complaint, citing Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).   With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>  –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a p[arty] to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside,</u> 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,</u> 20 F.3d 1250, 1261 (3d Cir. 1994).   However, a court "need not credit a

complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... p[arty] can prove facts that the ... p[arty] has not alleged."  Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a party must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do."  Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 679.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Rather, in conducting a

review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the party's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the . . . well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged . . . are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the p[arty's] entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a p[arty] must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Judged against these benchmarks, Concert's complaint fails on a number of independent grounds. At the outset, in considering this complaint we must note that virtually identical claims made by Concert in federal court in June 2010, were dismissed by this Court on statute of limitations and Rooker-Feldman abstention grounds. Concert v. Luzerne County Dept. of Children & Youth, CIV.3:10-CV-1219, 2010 WL 2505685 (M.D. Pa. June 15, 2010).

This simple truth prescribes the course we should now follow in addressing this case, which like Concert's prior federal case seeks to relitigate issues decided long ago in state court. Given the identity of issues in these two cases, the doctrine of collateral estoppel clearly applies here and precludes us from re-litigating these issues, yet again, in the guise of a new lawsuit.

Collateral estoppel and issue preclusion are doctrines which play a vital role in litigation. It has long been recognized that "[t]he doctrine[] of . . . collateral estoppel, now . . termed . . . issue preclusion, 'shar[es] the common goals of judicial economy, predictability, and freedom from harassment....' Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir.1988). Generally speaking, the . . . doctrine of issue preclusion, 'precludes the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted.' Melikian

v. Corradetti, 791 F.2d 274, 277 (3d Cir.1986)." Electro-Miniatures Corp. v. Wendon

Co., Inc. 889 F.2d 41, 44 (3d Cir.1989)(citations omitted).

The parameters of this doctrine, which precludes relitigation of certain issues, have been defined by the United States Court of Appeals for the Third Circuit in the following terms:

> Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated. "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.'" Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979). In its classic form, collateral estoppel also required "mutuality"-i.e., that the parties on both sides of the current proceeding be bound by the judgment in the prior proceeding. Parklane Hosiery, 439 U.S. at 326-27. Under the modern doctrine of non-mutual issue preclusion, however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary. See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 (1971); Parklane Hosiery, 439 U.S. at 329. For . . . non-mutual issue preclusion [] to apply, the party to be precluded must have had a "full and fair" opportunity to litigate the issue in the first action. See Parklane Hosiery, 439 U.S. at 328; Blonder-Tongue Labs., 402 U.S. at 331.

Peloro v. United States, 488 F.3d 163, 174-5 (3d Cir. 2007). Stated succinctly, principles of collateral estoppel compel a later court to honor the an earlier decision

of a matter that was actually litigated.  Dici v. Commonwealth of Pa., 91 F.3d 542 (3d Cir. 1997).

This doctrine, which involves an assessment of the overlap between issues presented in separate lawsuits, raises essentially legal questions which are often amenable to resolution by courts as a matter of law.  See, e.g., Peloro v. United States, supra; Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc, supra; Witkowski v. Welch, 173 F.3d 192, 198-205 (3d. Cir. 1999); Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd.,, 63 F.3d 1227, 1231-9 (3d. Cir. 1995)(summary judgment, offensive issue preclusion).  In this case, we find that all of the legal requisites for collateral estoppel are clearly present here.  To the extent that Concert's claims can be understood, the claims made in this action are identical to those advanced in  Concert v. Luzerne County Dept. of Children & Youth, CIV.3:10-CV-1219, 2010 WL 2505685 (M.D. Pa. June 15, 2010).  Given the factual and legal overlap in these claims, Concert's current complaint is barred under the doctrine of non-mutual collateral estoppel by our prior ruling in Concert v. Luzerne County Dept. of Children & Youth, CIV.3:10-CV-1219, 2010 WL 2505685 (M.D. Pa. June 15, 2010), and should be dismissed.

We also find that the allegations in this *pro se* complaint are clearly subject to dismissal on statute of limitations grounds.  Specifically, this complaint, which

alleges misconduct by government actors beginning in the 1980's, was first filed in May, 2010, more than two *decades* after the first events complained of by Concert. Therefore, the complaint is simply time-barred by the two year statute of limitations generally applicable to civil rights matters.

It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa.C.S.A. § 5524. A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also, Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations. For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir.

1998) (quoting <u>Kichline v. Consolidated Rail Corp</u>., 800 F. 2d 356, 360 (3d Cir.

1986)).  <u>See also</u> <u>Lake v. Arnold</u>,  232 F.3d 360, 266-68 (3d Cir. 2000).  Instead:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." <u>West v. Philadelphia Elec. Co.</u>, 45 F.3d 744, 754 (3d Cir.1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related  acts that would otherwise be time barred." <u>Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.</u>, 927 F.2d 1283, 1295 (3d Cir.1991).  In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." <u>West</u>, 45 F.3d at 755 (quotation omitted).  Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. <u>See id.</u> at 755 n. 9 (citing <u>Berry v. Board of Supervisors of Louisiana State Univ.</u>, 715 F.2d 971, 981 (5th Cir.1983)). The consideration of "degree of permanence" is the most important of the factors.  <u>See</u> <u>Berry</u>, 715 F.2d at 981.

<u>Cowell v. Palmer Township</u>. 263 F.3d 286, 292 (3d Cir. 2001).

In this case, Mr. Concert complains about child custody decisions made by the

state courts in 1990 and reaffirmed multiple times by the courts since 1990.  To the

extent that these decisions entailed a violation of the Plaintiff's constitutional rights,

that violation would have been apparent when it first occurred, in the 1990's, two

decades ago, and these 1990 child custody rulings would have long ago had a degree of permanence which should have triggered the Plaintiff's awareness of his duty to assert his rights. Indeed, these allegations, and this controversy, came to a close many years ago, when Concert's children reached the age of majority, in 2002 and 2005 respectively. Thus, in this case a straightforward application of the two-year statute of limitations also compels dismissal of this action as untimely.

The Rooker-Feldman doctrine also continues to apply here and in our view bars further consideration of this matter, which arises out of child foster care placements which were ordered by state courts in 1990, and were periodically reviewed and reaffirmed by those courts over the next twenty years. Given these lengthy state court proceedings spanning two decades relating to the placement of Concert's children, this complaint also fails because we lack subject matter jurisdiction over the issues raised by Concert, which necessarily invite a federal court to review, re-examine and reject state court rulings in a state domestic relations case.

This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker-Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." Turner v. Crawford Square Apartments III, LLP,, 449 F.3d 542, 547 (3d Cir. 2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

[E]mphasized the narrow scope of the Rooker-Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from considering civil rights lawsuits which seek to re-examine state domestic relations court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." Kwasnik v. Leblon, 228 F. App'x 238, 242 (3d Cir. 2007). In such instances, the federal courts have typically deferred to the state court domestic relations decisions, and rebuffed efforts to use federal civil rights laws to review, or reverse, those state court rulings. See, e.g., Marran v. Marran, 376 F.3d 143 (3d. Cir. 2004); Kwasnik 228 F. App'x 238, 242; Smith v. Department of Human Services, 198 F. App'x 227 (3d Cir. 2006); Van Tassel v. Lawrence County Domestic Relations Section, 659 F. Supp. 2d 672, 690 (W.D. Pa. 2009) aff'd sub nom. Van Tassel v. Lawrence County Domestic Relations Sections, 390 F. App'x 201 (3d Cir. 2010)(Rooker-Feldman doctrine operates as a jurisdictional bar to Plaintiff's claims if the injuries of which she complains were caused by a state court judgment or ruling which was entered against her); Buchanan v. Gay, 491 F. Supp. 2d 483, 487 (D. Del. 2007); Rose v. County of York, No. 05-5820, 2007 WL 136682 (E.D. Pa. Jan. 12, 2007); Logan v. Lillie, 965 F. Supp. 695, 696 (E.D. Pa. 1997) aff'd, 142 F.3d 428 (3d Cir. 1998); Behr v. Snider, 900 F. Supp. 719, 721 (E.D. Pa. 1995).

Given this settled legal authority, applying the <u>Rooker-Feldman</u> doctrine in this particular field, Concert's claims, which necessarily invite a federal court to review, re-examine and reject state court rulings in a state domestic relations case that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced" simply may not be pursued in this federal forum. <u>Kwasnik v. Leblon</u>, 228 F. App'x 238, 242 (3d Cir. 2007).

Further, dismissal of Concert's complaint is fully warranted because Concert's pleadings violate the basic rule of pleading which requires that "a District Court . . . determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." <u>Fowler</u>, 578 F.3d at 210-11. In addition, dismissal of this complaint is also warranted because the complaint fails to comply with Rule 8's basic injunction that: "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."

Dismissal of this complaint is appropriate for several reasons. First, the amended complaint names a number of Defendants but contains no well-pleaded factual averments relating to the Defendants in the body of the complaint. This style

of pleading is patently inadequate since it fails to allege facts that give rise to a plausible claim for relief.  Hudson v. City of McKeesport, 241 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case.) Moreover, it is also well-settled that: "[t]he Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), and that each averment be 'concise, and direct,' Fed. R. Civ. P. 8(e)(1)."  Scibelli v. Lebanon County, 219 F. App'x 221, 222 (3d Cir. 2007).   Thus, when a complaint is "illegible or incomprehensible", id., or when a complaint "is also largely unintelligible," Stephanatos v. Cohen,  236 F. App'x 785, 787 (3d Cir. 2007), an order dismissing a complaint under Rule 8  is clearly appropriate.  See, e.g., Mincy v. Klem, 303 F. App'x 106 (3d Cir. 2008); Rhett v. New Jersey State Superior Court, 260 F. App'x 513 (3d Cir. 2008); Stephanatos v. Cohen. supra;  Scibelli v. Lebanon County, supra;  Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 450 n.1 (5th Cir. 2005). Furthermore, dismissal under Rule 8 is proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of action];" Binsack v. Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011), or when the

complaint is so "rambling and unclear" as to defy response. <u>Tillio v. Spiess</u>, No. 11-1276, 2011 WL 3346787 (Aug. 4, 2011).[1]

Judged against these standards, Concert's complaint simply fails. Despite two years of litigation in state court, and two separate efforts by Concert to amend his pleadings to add coherence to his claims, those claims remain stubbornly ambiguous and indecipherable, as illustrated by the following passages from his current second amended complaint, in which Concert alleges that:

> Where forof ather states following this added Out of jurisdiction excursion it became clear that the conduct of abuse was retroactive for the first day po acquaintance with the defendants however immediately after the biological father announced his quest for criminal prosecution along with the Reunited of his biological children The above said defendants became more at rage more dysfunctional to law and order pertaining to the principal family Thomas concert and children initials RK JK. With consistent retroactive communications Couldn't find a remedy or resolution to the problems that exist to level of intimidation retaliation fictitious allegation slander as additional to submit to the record supporting professional medical misconduct.

(Doc. 1, Ex. G, p.16.)

---

[1]In the first instance Rule 8 dismissals are often entered without prejudice to allowing the litigant the opportunity to amend and cure any defects. In this case, Concert was provided two such opportunities during the state court litigation but has failed to amend his complaint in a fashion which meets the strictures of Rule 8. Therefore, dismissal of the complaint with prejudice is now warranted. <u>See, e.g.</u>, <u>Rhett v. New Jersey State Superior Court</u>, 260 F.App'x 513 (3d Cir. 2008); <u>Stephanatos v. Cohen</u>. <u>supra</u>; <u>Scibelli v. Lebanon County, supra.</u>

Concert then goes on the aver that:

> Plaintiff in this action has clearly stated that the pattern of practice conducted by the defendants serve no purpose to the fundamental policies of any court order of a program or any rule or law in Luzern County, state of Pennsylvania or United States of America where he honestly believes that in himself alone with his family and children were commodities of pork bellies of the same for their own financial gain nothing more nothing less with long-lasting damaging effects on the The fundamental basis of his children the plaintiff Life and family . . .

(Id., ¶32, p. 20.)

Since much of what Concert recites would leave "the defendants having to guess what of the many things discussed constituted [a cause of action];" Binsack v. Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011), dismissal of this action under Rule 8 is fully warranted here.

Furthermore, a number of Concert's specific legal claims fail on the face of these pleadings. For example, Concert's request that the court order criminal prosecution of the named defendants and others clearly runs afoul of the settled legal proposition that decisions regarding the filing of criminal charges are the prerogative of the executive branch of government, are consigned to the sound discretion of prosecutors, and under the separation of powers doctrine are not subject to judicial fiat. Indeed, it has long been recognized that the exercise of prosecutorial discretion

is a matter, "particularly ill-suited to judicial review." <u>Wayte v. United States</u>, 470 U.S. 598, 607 (1985).

Similarly, given the fact that Concert's children are no longer subject to the county foster care system and have not participated in foster care for at least seven years, Concert's requests for injunctive relief are now moot. The mootness doctrine recognizes a fundamental truth in litigation: "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." <u>Blanciak v. Allegheny Ludlum Corp.</u>, 77 F.3d 690, 698-99 (3d Cir. 1996). Here, the Court is unable to impose injunctive relief that would affect this foster care placement, which ended more than seven years ago, and it is simply beyond our power to order Concert's adult children to reunite with their father.

Finally, we note that this proposed disposition of the Plaintiff's federal legal claims, in turn, suggests the appropriate course for the Court to follow in addressing any ancillary state law claims that the Plaintiff may wish to pursue against these Defendants. In a case such as this, where the jurisdiction of the federal court was premised on alleged federal claims which are found to be subject to dismissal, the proper course generally is for "the court [to] decline to exercise supplemental jurisdiction over the Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district

courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims)." Bronson v. White No. 05-2150, 2007 WL 3033865, *13 (M.D.Pa. Oct. 15, 2007)(Caputo, J.)(adopting report and recommendation dismissing ancillary malpractice claim against dentist); see Ham v. Greer, 269 F. App'x 149, 151 (3d Cir. 2008)("Because the District Court appropriately dismissed [the inmate's] Bivens claims, no independent basis for federal jurisdiction remains. In addition, the District Court did not abuse its discretion in declining to address the state law negligence claims. 28 U.S.C. § 1367(c)(3); see United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Tully v. Mott Supermkts., Inc., 540 F.2d 187, 196 (3d Cir.1976).")

Dismissal of these ancillary state law claims–which relate to state domestic relations matters– is particularly appropriate here since "the United States Supreme Court has long recognized a domestic relations exception to federal diversity jurisdiction for cases '"involving the issuance of a divorce, alimony, or child custody decree."' Matusow v. Trans–County Title Agency, LLC, 545 F.3d 241, 245 (3d

Cir.2008) (quoting <u>Ankenbrandt v. Richards</u>, 504 U.S. 689, 704, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992)).” <u>Wattie-Bey v. Attorney General's Office</u>, 424 F. App’x. 95, 96 (3d Cir. 2011). Since the “domestic relations” doctrine generally forbids federal court adjudication of state domestic relations matters in diversity lawsuits, <u>see Ankenbrandt v. Richards</u>, 504 U.S. 689, 703 (1992), it also follows that, to the extent this complaint asks that we re-adjudicate a state domestic relations matter based upon our ancillary supplemental jurisdiction, this Court should decline the Plaintiff’s invitation and dismiss this action.

Thus, an analysis this final <u>Poulis</u> factor–the meritoriousness of the Plaintiff’s claims–reveals that the Plaintiff’s assertions against the Defendants in this complaint fail to allege a colorable claim under the Constitution. Given the legal bankruptcy of these claims, we find that all of the <u>Poulis</u> factors call for dismissal of this case.

Having concluded that this *pro se* complaint is flawed in multiple and profound ways, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, <u>see Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). In this case, the current complaint fails to state a viable civil rights cause of action, the factual and

legal grounds proffered in support of this complaint make it clear that he has no right

to relief, and the Plaintiff has declined to respond to court orders, or otherwise litigate

these claims.  On these facts, we conclude that granting further leave to amend would

be futile or result in undue delay.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

Therefore, it is recommended that the complaint be dismissed as to all Defendants

without further leave to amend.

## III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the

Defendants' motion to dismiss (Doc. 4.), be GRANTED and the Plaintiff's complaint

be dismissed as to all Defendants without further leave to amend.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within fourteen
(14) days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all parties,
written objections which shall specifically identify the portions of the
proposed findings, recommendations or report to which objection is
made and the basis for such objections.  The briefing requirements set
forth in Local Rule 72.2 shall apply.  A judge shall make a de novo
determination of those portions of the report or specified proposed
findings or recommendations to which objection is made and may
accept, reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 18th day of October 2012.

**_S/Martin C. Carlson_**
Martin C. Carlson
United States Magistrate Judge